IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN WILSON, ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 10-3915 |
| JOSHUA DEWEES, ET AL. : | |

SURRICK, J.                                                                           OCTOBER  9 , 2013

## MEMORANDUM

Presently before the Court is the Motion for Summary Judgment of Defendant, Officer David Brockway, and Motion for Partial Summary Judgment of Defendant, Officer Joshua Dewees.  (ECF No. 33.)  For the following reasons, the Motion will be granted in part and denied in part.

## I.     BACKGROUND

Plaintiffs Kevin Wilson and Julius Bradley brought this lawsuit against the City of Chester, the City of Chester Housing Authority ("CCHA"), and individual police officers Joshua Dewees, David Brockway, and Edward Corangi.  The claims of Julius Bradley were dismissed after a hearing, by Order dated Jun 21, 2013.  (*See* ECF No. 24.).[1]  Plaintiff Wilson asserts claims for the use of excessive force under the Fourth Amendment, false arrest and false imprisonment under 42 U.S.C. § 1983, assault and battery, malicious prosecution under state law and under § 1983, and intentional infliction of emotional distress.  (Compl., ECF No. 1; Court's Mem. Dismiss, ECF No. 29; Court's Order Dismiss, ECF No. 30.)  The claims arise out of

---

[1] Defendants CCHA and Edward Corangi were dismissed with prejudice pursuant to an agreement reached among the parties.  (*See* ECF No. 19.)  Julius Bradley's claims were dismissed with prejudice as a result of Bradley's failure to cooperate with counsel and failure to prosecute.  (*See* June 21, 2013 Hr'g Tr., ECF No. 26)  The City of Chester was also dismissed as a Defendant with prejudice, pursuant to the Court's July 8, 2013 Memorandum and Order.  (*See* ECF Nos. 29, 30.)

Plaintiff's arrest and prosecution by Defendants, Officers Dewees and Brockway, that occurred on October 9, 2009.

    A.    **Procedural Background**

On August 5, 2010, Plaintiff filed a Complaint asserting seven causes of action under the Fourth and Fourteenth Amendments, Pennsylvania state law, and § 1983. The parties agreed to the dismissal of many of the claims. (*See* Court's Mem. Dismiss.) On July 8, 2013, the Court entered a Memorandum and Order granting in part and denying in part, Defendants' motion to dismiss. (*Id.*; Court's Order Dismiss.) As a result of the parties' agreements to dismiss, and the Court's July 8 ruling, the following claims survived the motion to dismiss stage: (1) excessive force under the Fourth Amendment; (2) false arrest and false imprisonment under § 1983; (3) assault and battery; (4) malicious prosecution under state law and § 1983; and (5) intentional infliction of emotional distress. (Court's Mem. Dismiss 8-9.) Plaintiff asserts all of these claims against both Officer Dewees and Officer Brockway. (*Id.*)

On August 9, 2013, Defendants filed the instant Motion for Summary Judgment of Defendant, Officer David Brockway, and Motion for Partial Summary Judgment of Defendant, Officer Joshua Dewees. (Defs.' Mot., ECF No. 33.)[2] On August 29, 2013, Plaintiff filed a Response in opposition to Defendant's Motion. (Pl.'s Resp., ECF No. 35.)[3] On September 6,

---

[2] Defendants attached the following exhibits to their Motion: the deposition transcript of Plaintiff Kevin Wilson (Exhibit A); the deposition transcript of Officer Joshua Dewees (Exhibit B); the deposition transcript of Officer David Brockway (Exhibit C); the deposition transcript of Officer Edward Carangi (Exhibit D); the Chester City Police Incident Report 2009-43701, completed by Officer Dewees (Exhibit E); and the Criminal Complaint and Affidavit of Probable Cause prepared by Officer Joshua Dewees (Exhibit F).

[3] Plaintiff attached two exhibits to their Response: the deposition transcript of Reese Wilson (Exhibit A); and the deposition transcript of Russell Blake (Exhibit B).

2013, Defendants filed a Reply in further support of their Motion. (Defs.' Reply, ECF No. 40.) Trial is scheduled to begin on October 15, 2013.

### B. Factual Background[4]

On the evening of October 9, 2009, Wilson left a dance at the Leake Recreation Center located at Seventh and Yarnall Streets in the City of Chester. (Wilson Dep. 9-10, Defs.' Mot. Ex. A.) The dance let out at around 11:00 p.m. and approximately 100 to 200 people left at the same time. (*Id*. at 10.) Plaintiff observed no fights among the people as they exited the dance, but stated that people were "hyper" and still talking and dancing. (*Id*. at 11.) Plaintiff stated that he had had two beers that evening. (*Id*. at 10.) After leaving the dance, Plaintiff was with a group of approximately 15 to 20 friends. (*Id*. at 17.) Plaintiff and his friends began walking away from the Leake Center on Yarnall Street towards Ninth Street. (*Id*. at 12.) As Plaintiff was approaching Ninth Street, he noticed two police cars driving down Yarnall Street towards them. (*Id*. at 12, 14-15.) The officers in one of the police cars began speaking with Plaintiff's cousin, Gary. (*Id*. at 15.) Plaintiff kept walking down Yarnall Street while his cousin was talking to the officers. (*Id*. at 16.) When Plaintiff approached the intersection of Tenth and Yarnall Streets, he was suddenly tackled from behind by Officer Dewees. (*Id*. at 16, 18.) Plaintiff was not wearing a shirt when he was tackled because it was hot at the dance. (*Id*. at 16.) At the time that Plaintiff was tackled, another police vehicle approached and Plaintiff and Officer Dewees "bounced off" of the approaching police vehicle. (*Id*. at 18.) Two police officers exited the vehicle and each held Plaintiff by one of his arms while Officer Dewees struck Plaintiff repeatedly on his head and across his face with a flashlight. (*Id*. at 18, 21.) Plaintiff testified that he was struck with the

---

[4] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ*., 442 F.3d 848, 852 (3d Cir. 2006).

flashlight at least ten times. (*Id*. at 23.)[5] Plaintiff tried to yell out in an effort to let the officers know that he was giving up. (*Id*. at 18-19.) The officers picked Plaintiff up off of the ground from his knees and struck him again two more times across the face with the flashlight. (*Id*. at 19.) Plaintiff recalls that one of the police officers that held his arms was Officer Corangi. (*Id*. at 20.) Plaintiff does not recall the name of the other police officer. (*Id.*)[6]

Plaintiff was handcuffed while on the ground by Officer Dewees. (Wilson Dep. 25.) Plaintiff was bleeding. (*Id.*) Officer Dewees picked Plaintiff up off the ground and placed him face down on the trunk of Officer Corangi's police vehicle. (*Id*. at 25.) When Plaintiff bled on the vehicle, Officer Corangi placed Plaintiff's white t-shirt in his hand-cuffed hands and demanded that he wipe the blood off of his vehicle. (*Id*. at 26-27, 30.) Plaintiff was then placed in another police vehicle and taken to the police station. (*Id*. at 36-37.) Plaintiff does not recall the name of the police officer that drove him to the station. (*Id*. at 37.) Plaintiff was taken to the station with at least three other individuals.[7]

---

[5] Plaintiff's cousin, Reese Wilson, was a witness to the incident and corroborated Plaintiff's statements that he was struck with a flashlight. Reese Wilson further stated that the flashlight appeared to be approximately fifteen inches long. (Reese Wilson Dep. 23, Pl's Resp. Ex. A.) Russell Blake, Plaintiff's good friend, also witnessed the incident and stated at his deposition that Plaintiff was repeatedly struck by a flashlight by Officer Dewees. (Blake Dep. 19, Pl.'s Resp. Ex. B.) Officer Dewees and Officer Brockway both stated that Officer Dewees did not strike Plaintiff with a flashlight or with his fists. (Dewees Dep. 33, Defs.' Mot. Ex. B.); Brockway Dep. 34, Defs.' Mot. Ex. C.)

[6] Russell Blake stated that Plaintiff was held by one police officer while the other police hit him with the flashlight. (Blake Dep. 18-19, Pl.'s Resp. Ex. B.) Plaintiff contends that the police officer holding him was Officer Brockway. (Pl.'s Resp. 10, 11, 13.) Defendants contend that Blake never mentioned Officer Brockway by name, and thus, Blake's testimony should not be relied upon in assessing Officer Brockway's role in the incident. (Defs.' Reply 1-2.)

[7] There are factual disputes about the events that occurred that evening. Officer Dewees's description of the events is very different than Plaintiff's description. Officer Dewees stated that he was dispatched to the area to respond to a disorderly crowd of 200 or more people,

At the station, Plaintiff was fingerprinted and placed in a holding cell. (*Id*. at 41.) Plaintiff was not given a breathalyzer at the station. (*Id.*) Plaintiff requested but was not provided any medical attention while he was at the station. (*Id*. at 42.) Bail was set at $50,000. Plaintiff was released after his mother posted bail at 8:00 p.m. the following evening. (*Id*. at 43.) Plaintiff was in custody for approximately 22 hours. (*Id*. at 45.)

After Plaintiff arrived home with his mother and his girlfriend, he blacked out and an ambulance came to revive him and take him to the hospital. (*Id*. at 53-54.) Plaintiff was diagnosed as having a concussion. (*Id*. at 55.) As a result of the incident, Plaintiff suffered from gashes and lacerations on his face, brush burns on his shoulder, and a swollen and bruised head. (*Id*. at 68-72.) Plaintiff testified that, following this incident, he saw a psychologist for approximately three to four months for trauma. (*Id*. at 63, 65-66.) He stated that he was, and

---

and that when he arrived, he witnessed large groups "scattered about the area screaming, yelling, using foul language, throwing objects, and blocking the sidewalks." (Incident Report 4, Defs.' Mot. Ex. E.) He further stated that the group at Ninth and Yarnall Streets, which included Plaintiff, "were standing in the roadway ripping their shirts off swinging them around and using foul language in attempts to make the crowd rowdy." (*Id*.) Officer Dewees stated that Plaintiff was "out of control" and "enticing the crowd" and that other people present were laughing at him or hollering at him. (Dewees Dep. 17-18.) Officer Dewees does not remember what he said to Plaintiff exactly, but that he "would have told them to keep moving" and clear out of the street. (*Id*. at 22.) Officer Dewees stated that he attempted to approach Plaintiff, but Plaintiff began to run away. (*Id*.) Officer Dewees then caught up to Plaintiff, grabbed him, placed him on a police car, and attempted to handcuff him. (*Id*. at 27-28.) Officer Dewees stated that Plaintiff struggled and struck Officer Dewees in the face with his elbow. (*Id*. at 28.) With the assistance of two other officers, one of whom was Officer Brockway, Plaintiff was taken to the ground and handcuffed. (*Id*. at 28-30.)

Officer Brockway stated that when he arrived at the scene, Officer Dewees had Plaintiff up against a police vehicle and was trying to take him into custody. (Brockway Dep. 26.) When Officer Brockway approached, he saw "an arm fly" from Plaintiff. (*Id*. at 28.) Officer Brockway stated that he then grabbed Plaintiff's arm and held it to the vehicle, but that Officer Dewees and Plaintiff pushed back and fell to the ground. (*Id*. at 29.) Officer Brockway stated that there was a struggle between Plaintiff and Officer Dewees, and that Officer Dewees finally placed Plaintiff in handcuffs. (*Id*. at 30.) Officer Brockway claims that he did not assist Officer Dewees in placing Plaintiff in handcuffs, and that the only time he touched Plaintiff was when he held his arm to the vehicle. (*Id*. at 31.)

5

continues to be, afraid of flashlights and of people coming close to him.  (*Id*. at 66.)  Plaintiff still has headaches as a result of the incident.  (*Id*.)  Plaintiff testified that Officer Dewees was not "ever touched" by him and was not injured as a result of the incident.  (*Id*. at 40.)[8]  Plaintiff was nineteen years old at the time of the incident.  (Wilson Dep. 8.)

Officer Dewees prepared the Incident Investigation Report and the Criminal Complaint. The Criminal Complaint charged Plaintiff with disorderly conduct, harassment, resisting arrest, failure of disorderly persons to disperse upon official order, aggravated assault, simple assault, and recklessly endangering another person.  (Crim. Compl., Defs.' Mot. Ex. F; *see also* Dewees Dep. 53.)  The Affidavit of Probable Cause states that when the Officers arrived at the scene of the incident, there was a group at the corner of Ninth and Yarnall Streets that "were standing in the roadway ripping their shirts off swinging them around and using foul language in attempts to make the crowd more rowdy."  (Crim. Compl. 6.)  The Affidavit of Probable Cause also states that Plaintiff was chased, resisted arrest, fought the attempts of the officers to take him to the ground, and that Officer Dewees was struck in the face with Plaintiff's elbow during the struggle.  (*Id*.)  The Affidavit states that Officers Brockway and Corangi came to Officer Dewees's aid in restraining Plaintiff during the incident.  (*Id*.)  The Affidavit does not mention the use of a flashlight or that Plaintiff had appeared intoxicated.  (*Id*.)  On April 4, 2010, Chester Magisterial District Judge Dawn Vann dismissed all charges against Plaintiff.  (Compl. ¶¶ 20, 27.)

---

[8] Officer Dewees stated that he suffered from cuts and scratches on his knees and elbows and a swollen lip.  (Incident Report 7.)

II.     **LEGAL STANDARD**

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . ."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must not resolve factual disputes or make credibility determinations. *Siegel v. Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.  DISCUSSION

Defendants seek dismissal of Plaintiff's claims for false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress against both Officer Dewees and Officer Brockway. In addition, Defendant Officer Brockway requests that the Court grant him summary judgment on Plaintiff's claims for excessive force and assault and battery.

### A.  False Arrest and False Imprisonment Claims

Defendants move for summary judgment on Count Two of Plaintiff's Complaint, which alleges false arrest and false imprisonment, in violation of 42 U.S.C. § 1983. False arrest and false imprisonment are "nearly identical claims," and courts often analyze the claims together. *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005). False arrest is "grounded in the Fourth Amendment's guarantee against unreasonable seizures," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995), where false imprisonment is based upon the Fourth Amendment's prohibition against deprivation of liberty without due process of law, *Baker v. McCollan*, 443 U.S. 137, 145 (1979). "Claims of both false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourteenth Amendment. *Quinn v. Cintron*, No. 11-2471, 2013 U.S. Dist. LEXIS 143682, at *9 (E.D. Pa. Oct. 3, 2013) (citing *Baker*, 443 U.S. at 145, *Groman*, 47 F.3d at 636). If an arrest is supported by probable cause, then there is no constitutional violation and no viable § 1983 claim. *Id*. To prevail on a § 1983 claim for false arrest or false imprisonment, Plaintiff must show that the police officers arrested him without probable cause. *Groman*, 47 F.3d at 636; *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988).

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an

offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Generally, the existence of probable cause is an issue reserved for the jury, particularly in cases when the probable cause determination rests on credibility conflicts. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). "However, a district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Id.* at 788-89 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

### 1. *Officer Dewees*

Defendants contend that the false arrest and false imprisonment claims should be dismissed because Officer Dewees had probable cause to arrest Plaintiff. (Defs.' Mot. 14.) Defendants contend that probable cause existed because (1) Plaintiff admitted to consuming two beers at the dance, and thus, was guilty of underage drinking, (2) Plaintiff stated that people leaving the dance were "hyper," and (3) Plaintiff testified that he was walking in the middle of the street with a group of people. (*Id.*)

Officer Dewees's reliance on the fact that Plaintiff had consumed two beers at the dance in support of his probable cause argument is questionable. Nowhere in the record is there any statement that Plaintiff was acting at all intoxicated. Neither the Incident Report, nor the Criminal Complaint makes any mention of Plaintiff's alcohol consumption or visible intoxication. Had intoxication or underage drinking been a concern of Officer Dewees, Plaintiff could have been given a breathalyzer test when he arrived at the police station for booking. Plaintiff did not receive a breathalyzer test. There is no indication in the record that Officer Dewees had any idea that Plaintiff had consumed beers until after Plaintiff admitted this fact at

his deposition.  At this juncture, underage drinking does not support a finding that probable cause existed.  Similarly, Plaintiff's statement that people leaving the dance were hyper does not necessarily support a finding of probable cause.  Even if it is true that people were hyper, this is not a sufficient justification to arrest Plaintiff where there was no indication that Plaintiff was engaged in any violence or otherwise was committing a crime.  Finally, there appears to be a dispute as to whether Plaintiff was walking in the middle of the street inciting the crowd or whether he was simply crossing the intersection of Tenth and Yarnall Streets.  When viewing the facts in the light most favorable to Plaintiff, which we are required to do, Plaintiff simply crossing at an intersection does not provide probable cause to justify Officer Dewees's stop and seizure of Plaintiff.  We therefore will deny summary judgment with respect to false arrest and false imprisonment claims against Officer Dewees.

    2.  *Officer Brockway*

  Officer Brockway raises a slightly different argument in support of dismissing the false arrest and false imprisonment claims.  Officer Brockway contends that he arrived at the scene after Officer Dewees had already begun to place Defendant into custody, and thus, Officer Brockway was entitled to rely on Officer Dewees's probable cause determination, even if it may later be determined that probable cause did not exist.

  Officer Brockway relies on *Stearns v. Clarkson*, 615 F.3d 1278 (10th Cir. 2010), a Tenth Circuit case holding that "[w]hen one officer requests that another officer assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists." *Id*. at 1286.  In other words, the police officer is entitled to qualified immunity if his reliance on the probable cause determination of his fellow police officer was reasonable. *Id*.  The Third Circuit

has framed the inquiry differently when analyzing an assisting officer's reliance on the probable cause determinations of other officers. In *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997), the Third Circuit held that "where a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997).

Officer Brockway testified that he arrived at the scene after witnessing Officer Dewees attempting to detain Plaintiff. As he approached, he saw "an arm fly" from Plaintiff, at which time, he assisted Officer Dewees in grabbing Plaintiff's arm and holding it on the police vehicle. There is no indication that Officer Dewees made any statements to Officer Brockway about why Plaintiff was being detained or placed into custody. Thus, Officer Brockway's independent probable cause determination must have been based upon his own observations of the scene when he approached. Although Officer Brockway testified that he saw "an arm fly" from Plaintiff, which prompted him to assist Officer Dewees, Plaintiff testified that he never elbowed Officer Dewees or touched him. Under the circumstances, the basis of Officer Brockway's probable cause determination rests on a factual dispute and a credibility conflict. Viewing the facts in a light most favorable to Plaintiff, we are compelled to deny summary judgment on these claims.

### B.     Malicious Prosecution Claims

Defendants also move for summary judgment on Count Six of Plaintiff's Complaint, which alleges malicious prosecution under § 1983 and Pennsylvania state law. In order to state a claim for malicious prosecution under § 1983, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). The requirements to prove a Pennsylvania state law cause of action for malicious prosecution are almost identical to the federal counterpart, except that a plaintiff need not prove a deprivation of liberty consistent with the concept of seizure. To succeed on a malicious prosecution claim under Pennsylvania law, a plaintiff must show that the defendant "(1) instituted proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) that the proceedings were terminated in favor of the plaintiff." *Corrigan v. Cent. Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Commw. Ct. 2003). Defendants do not dispute that Plaintiff was seized.

### 1.   *Officer Dewees*

Officer Dewees argues that the malicious prosecution claims should be dismissed because he had probable cause to arrest Plaintiff. We have found with respect to the false arrest and false imprisonment claims that the determination of probable cause is subject to factual disputes and credibility conflicts. *See supra* at Section III.B.1. Officer Dewees asserts no other arguments in support of dismissing these claims. Accordingly, we will deny summary judgment as to Officer Dewees on Count Six.

### 2.   *Officer Brockway*

Officer Brockway argues that he was entitled to reasonably rely upon the probable cause determination of Officer Dewees. As we stated above, factual disputes preclude us from finding

as a matter of law that Officer Brockway had probable cause to assist Officer Dewees in the arrest of Plaintiff.  *See supra* at Section III.B.II.

Officer Brockway also argues that the claim should be dismissed because it was Officer Dewees that initiated criminal proceedings against Plaintiff, and not him.  There is no dispute that Officer Dewees prepared the Incident Report and the Criminal Complaint.  As we stated in our July 8, 2013 Memorandum, a police officer may nevertheless be responsible for initiating criminal proceedings if he "knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed decision."  (Court's Mem. Dismiss 7 (quoting *Henderson v. City of Phila.*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012)); *see also Marcia v. Micewski*, No. 97-5379, 1998 U.S. Dist. LEXIS 13243, at *27-28 (E.D. Pa. Aug. 24, 1998) ("An individual can be liable for malicious prosecution if he fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.") (citations omitted).  There is no evidence in the record suggesting that Officer Brockway made false or misleading statements to prosecutors or otherwise interfered with the criminal proceedings against Plaintiff.   Plaintiff does not even respond to this argument in his Opposition to Defendants' Motion.  Accordingly, we will grant Officer Brockway summary judgment on the malicious prosecution claims.

### C. Excessive Force and Assault and Battery Claims Against Officer Brockway

Officer Brockway moves for summary judgment on Counts One and Five of Plaintiff's Complaint, which allege claims of excessive force under § 1983 and assault and battery, respectively. (Defs.' Mot. 15-16.)  Officer Dewees does not seek dismissal of these claims.

The Fourth Amendment prohibits the use of unreasonably excessive force when making an arrest. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). Whether a police officer uses excessive force during the course of an arrest is determined using a reasonableness standard, "giving careful attention to the facts and circumstances of each particular case, and recognizing that the use of some coercion necessarily inheres in the officer's right to make such an investigatory stop or seizure." *Nwegbo v. Colwyn Borough*, No. 12-5063, 2013 U.S. Dist. LEXIS 93386, at *26 (E.D. Pa. July 3, 2013) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). To state a claim for excessive force under § 1983, Plaintiff must show that a seizure occurred and that it was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004). Factors for the Court to consider when making this determination include the severity of the crime, whether the suspect posed an immediate threat to public safety, and whether the suspect was actively resisting or evading arrest. *Woods v. Grant*, 381 F. App'x 144, 146 (3d Cir. 2010) (citing *Graham*, 490 U.S. at 396).

Plaintiff's assault and battery claims are state-law claims. Under Pennsylvania law, an assault is "an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. Borough of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)). A police officer is entitled to use reasonable force in making an arrest, and "[t]he reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Nwegbo*, 2013 U.S. Dist. LEXIS 93386, at *26 (citing *Renk*, 641 A.2d at 293). A

police officer will become liable for assault and battery when the "force used in making an arrest is unnecessary or excessive." *Renk*, 641 A.2d at 293.

Officer Brockway argues that he cannot be liable for excessive force or assault and battery because Plaintiff fails to identify him as having committed any act against Plaintiff. In other words, Officer Brockway argues that his personal involvement in the seizure and arrest of Plaintiff was so minimal that it does not rise to the level of a constitutional or tort claim.

A defendant in a civil rights action "must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Pamplin v. Coulter*, No. 10-227, 2012 U.S. Dist. LEXIS 76381, at *13 (W.D. Pa. June 1, 2012) (quoting *Baraka v. McGreevy*, 481 F.3d 187, 210 (3d Cir. 2007)). Personal involvement can be demonstrated with evidence that the officer personally directed the alleged wrongs or had actual knowledge and acquiescence of the wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

There exists a dispute as to a genuine issue of material fact as it relates to Officer Brockway's involvement in the arrest of Plaintiff. Plaintiff contends that Officer Brockway and another police officer held his arms while Officer Dewees struck him repeatedly with the flashlight. However, during Plaintiff's deposition, he testified that he did not know the names of the officers who held his arms. Russell Blake also testified that one police officer held plaintiff while another officer struck Plaintiff with a flashlight, although Blake similarly did not know the names of the police officers. Officer Brockway stated that when he arrived at the scene, he saw "an arm fly" from Plaintiff, and that he assisted Officer Dewees by grabbing Plaintiff's arm and holding it to the vehicle. Officer Brockway further testified that this was the only time that he

touched Plaintiff during the incident.  Defendant contends that because neither Plaintiff nor Russell Blake were able to identify Officer Brockway by name, then Officer Brockway's testimony is undisputed.  We disagree.  The Criminal Complaint, which was prepared by Officer Dewees, states that "Officer Brockway and Officer Corangie came to my aid and a brief struggle ensued between us and [Plaintiff]," and that "[w]e attempted to take [Plaintiff] to the ground but he fought our attempts."  (Criminal Compl. 6.)  If we are to accept Plaintiff's testimony, which we must for purposes of this Motion, we are satisfied that a jury may find Officer Brockway's involvement in the arrest of Plaintiff unlawful.  We will deny summary judgment on the excessive force claims.

### D. Intentional Infliction of Emotional Distress (IIED)

Defendants seek dismissal of Plaintiff's intentional infliction of emotional distress ("IIED") claim, arguing that Plaintiff has failed to present sufficient evidence demonstrating that he suffered from severe emotional distress.  (Defs.' Mot. 16-17.)  Defendants also argue that the facts, even when viewed in a light most favorable to Plaintiff, does not support a finding that Officers Dewees and Brockway engaged in extreme and outrageous conduct.  (*Id*.)

In order to prove a claim of IIED under Pennsylvania law, Plaintiff must show that:  (1) the conduct was "extreme and outrageous"; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe.  *Dittrich v. Seeds*, No. 04-1302, 2005 U.S. Dist. LEXIS 22078, at *33 (E.D. Pa. Sept. 28, 2005) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)).  In order to sustain a claim for IIED, Pennsylvania courts require "competent medical evidence" showing that the plaintiff suffered emotional distress.  *Kazatsky v. King David Mem'l Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *see also Bougher v.*

*Univ. of Pitt.*, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress.").

The only medical evidence in the record that supports a claim for IIED are statements Plaintiff made at his deposition. Specifically, Plaintiff stated that he saw a psychologist for three to four months after the incident to address trauma, his fear of flashlights, and his fear to be close to people. Aside from Plaintiff's uncorroborated deposition testimony, there is no other evidence in the record demonstrating that Plaintiff suffered extreme emotional distress as a result of the incident. At the very least, Plaintiff could have submitted a report or affidavit from Plaintiff's psychologist. He did not. In fact, Plaintiff does not even mention the treatment that he sought for emotional distress in his opposition to summary judgment. We are compelled to dismiss Plaintiff's IIED claim against both Officer Dewees and Officer Brockway. *See Whitaker v. Firman*, No. 12-224, 2013 U.S. Dist. LEXIS 117583, at *17-18 (W.D. Pa. Aug. 20, 2013) (dismissing IIED claim on summary judgment where plaintiff failed to offer competent medical evidence in support of claim); *Prater v. City of Phila.*, No. 11-1618, 2012 U.S. Dist. LEXIS 160771, at *18-19 (E.D. Pa. Nov. 8, 2012) (dismissing the plaintiff's IIED claim on summary judgment where the record contained no evidence that plaintiff received medical treatment for emotional distress as a result of the incident).

### E. Qualified Immunity

Finally, Officer Brockway argues that he is entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims. (Defs.' Mot. 18-20.)

The doctrine of qualified immunity shields police officers and other government officials "from liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  As the Supreme Court has explained, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties responsibly." *Person v. Callahan*, 555 U.S. 223, 231 (2009).  Whether a government official is entitled to qualified immunity is a question of law for the court to decide.  *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007).  However, to the extent that resolving the question of whether qualified immunity applies depends upon disputed facts, "our precedent makes clear that such [factual] disputes must be resolved by a jury after a trial." *Id*. at 208.

"Summary judgment on qualified immunity is inappropriate if 'a reasonable jury could find that the unlawfulness of [defendants'] actions was so apparent that no reasonable [actor in defendants' position] could have believed his actions were lawful." *Campbell v. City of Phila*., No. 07-3226, 2013 U.S. Dist. LEXIS 25799, at *44 (E.D. Pa. Feb. 26, 2013) (quoting *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir. 1988).

The question of whether a reasonable jury could find that the unlawfulness of Officer Brockway's actions was so apparent that no reasonable police officer in Officer Brockway's position could have believed his actions were lawful depends on the resolution of disputed issues of fact.  As set forth above, there is a genuine dispute as to whether Officer Brockway held and restrained Plaintiff in order to facilitate the beating of Plaintiff by Officer Dewees, or whether, as Officer Brockway contends, he merely placed his arm on the car vehicle.  There is also a dispute as to whether there was probable cause to seize and arrest Plaintiff, and whether Officer

Brockway had an independent basis for probable cause from his observations as he approached the scene. These disputed issues are more appropriately left for a jury to resolve. Accordingly, we deny Officer Brockway's request to dismiss Plaintiff's Fourth Amendment claims against him based on the doctrine of qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of Defendant, Officer David Brockway, and Motion for Partial Summary Judgment of Defendant, Officer Joshua Dewees is granted in part and denied in part. The Motion is granted with respect to the malicious prosecution claim against Defendant Brockway and the intentional infliction of emotional distress claim against Defendants Dewees and Brockway. The Motion is denied with respect to all other claims.

An appropriate Order follows.

                                                    **BY THE COURT:**

                                          _____
                                          **R. BARCLAY SURRICK, J.**